IN THE CIRCUIT COURT OF JACKSON COUNTY, ARKANSAS
CIVIL DIVISION

DARON DEWAYNE TURNER                                          PLAINTIFF

v.                                    Case No. 2011-CV-___7C_____

MCDONALDS CORPORATION;
MCDONALDS USA, LLC; NEWPORT
ENTERPRISES, LLC; SHEILA SNOW;
JULIE SUMMERFIELD; SARA MCGEE;
JOHN DOE ENTITIES 1-10; JOHN DOE
INDIVIDUALS 11-20                                             DEFENDANTS

*FILED
AT_____ M
APR 06 2011
LISA TURNER
Circuit Clerk
Jackson County, Arkansas*

## COMPLAINT

Plaintiff, Daron Dewayne Turner ("Turner"), by and through his counsel, Barrett & Deacon, P.A., for his Complaint against the defendants, states:

1. Turner is resident of Newport, Jackson County, Arkansas.

2. McDonald's Corporation is a Delaware corporation headquartered in Illinois and licensed to do business in the State of Arkansas. Its registered agent for service is The Prentice-Hall Corporation System, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201. At all times relevant, McDonald's Corporation was the owner and/or franchisor of a McDonald's restaurant located in Newport, Arkansas.

3. McDonald's USA, LLC is a Delaware limited liability company headquartered in Illinois and licensed to do business in the State of Arkansas. Its registered agent for service is The Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201. At all times relevant,

McDonald's USA, LLC was the owner and/or franchisor of a McDonald's restaurant located in Newport, Arkansas.

4.     Newport Enterprises, LLC is a Tennessee limited liability company headquartered in Tennessee and licensed to do business in the State of Arkansas. Its registered agent for service is Chad Tillman, 2300 Malcolm Ave., Newport, Arkansas 72112. At all times relevant, Newport Enterprises, LLC was the franchise operator of the McDonald's restaurant located in Newport, Arkansas.

5.     John Doe Entities 1-10 are domestic and foreign corporate entities licensed to do business in the State of Arkansas. At all times relevant, John Doe Entities 1-10 may have been the owners/franchisors/franchisees of the McDonald's restaurant located in Newport, Arkansas. Exhibit A.

6.     McDonald's Corporation, McDonald's USA, LLC, Newport Enterprises, LLC, and John Doe Entities 1-10 are hereinafter referred to collectively as the "McDonald's Defendants."

7.     Upon information and belief, Sheila Snow is an Arkansas resident and serves as Area Manager for the McDonald's Defendants.

8.     Upon information and belief, Sara McGee is a resident of Arkansas and serves as Assistant Manager for the McDonald's restaurant located in Newport, Arkansas.

9.     Upon information and belief, Julie Summerfield is a resident of Jonesboro, Arkansas and serves as Store Manager for the McDonald's restaurant located in Newport, Arkansas.

10.     John Doe Individuals 11-20 are individual, management-level employees of the McDonald's Defendants and are believed to be residents of Arkansas.  Exhibit A.

11.     Sheila Snow, Sara Magee, Julie Summerfield, and John Doe Individuals 11-20 are hereinafter referred to collectively as the "McDonald's Management Team."

12.     The events giving rise to this cause of action occurred in Newport, Jackson County, Arkansas.

13.     This Court has both subject matter jurisdiction over this cause of action and personal jurisdiction over the parties hereto, and venue is proper.

## FACTUAL ALLEGATIONS

14.     In or about April 2010, Turner applied for a position at the McDonald's restaurant in Newport, Arkansas.

15.     Shortly thereafter, Turner was notified that he had been hired for the position and that he should report to orientation, which began on April 13, 2010 at the McDonald's restaurant in Newport, Arkansas.

16.     Turner completed orientation and began working as a part-time employee on April 16, 2010.

17.     On his first day of work, and while performing the duties that were assigned to him by his supervisors, the McDonald's Management Team approached Turner and presented him with a criminal background report, which they claimed reflected the criminal history of Turner.

18.     The background report, however, actually referred to the criminal record of "Darrion Lamar Turner," who upon information and belief is a registered sex offender in

the State of North Carolina, as opposed to Daron Dewayne Turner, the plaintiff in this action.

19.    Turner was not and never has been a registered sex offender in the State of North Carolina; nor has Turner ever been arrested or convicted of any sex-related crime in the State of North Carolina or in any other state.

20.    Turner attempted to explain to the members of McDonald's Management Team that the background report was actually for an individual other than himself and that he had never been convicted of a crime in North Carolina.

21.    Turner presented the McDonald's Management Team with his birth certificate, driver's license, and social security card, among other forms of identification, all of which demonstrated that Turner was not the individual referenced in the criminal background report; in fact, Turner's first and middle names, birth date, and social security number differed from the individual in the criminal background report.

22.    Turner also explained that the individual's photograph on the criminal background report was not representative of himself; he even had to explain that the African-American individual in the photograph had a lighter skin tone than Turner, also an African-American.

23.    Despite Turner's multiple forms of proof of identification, the McDonald's Management Team stated that Turner and the convicted felon "looked alike" and that the McDonald's Management Team believed that the individual in the criminal background report was in fact Turner.

24. Acting on this false belief, the McDonald's Management Team suspended Turner from work pending further notice.

25. Subsequently, Turner was notified by telephone that he was being terminated because of the information contained in the incorrect criminal background check.

26. Turner was never given an opportunity to formally dispute the information contained in the background check, and he was never provided with a copy of the background check.

27. Following his termination, Turner began looking for other employment opportunities in the Newport area, submitting applications to a number of potential employers inclusive of fast food entities.

28. Turner contacted the Taco Bell restaurant in Newport, Arkansas, to inquire about the status of his employment application. Turner was advised that he would not be hired. The stated reason for the rejection of Turner's application was that the McDonald's Management Team advised Taco Bell not to hire Turner because he was a registered sex offender. During this same time frame, Turner did not receive any feedback from any other potential employer with whom he had submitted an application. Upon information and belief, all other potential employers were provided the same false information by the McDonald's Management Team.

29. The information concerning Turner's criminal background was false and was communicated by the McDonald's Management Team with ill-will and malice.

30.     Relying on this false information, potential employers of Turner declined to

consider Turner for open job positions; had these potential employers not received this

false and malicious information from the McDonald's Management Team, the potential

employers would have hired Turner.

31.     Upon information and belief, the McDonald's Management Team has also

relayed this false and harmful information concerning Turner to other non-management

employees at McDonald's and to members of the general public.

32.     Upon information and belief, the non-management employees at

McDonald's have also relayed this false and harmful information concerning Turner to

members of the general public.

33.     This false and malicious information—that Turner is a registered sex

offender—is highly offensive and injurious to Turner's reputation and good standing in

the community.

## COUNT 1—DEFAMATION

34.     Paragraphs 1–33 above are re-alleged and incorporated as if fully set forth

herein.

35.     The information concerning Turner's alleged criminal history was false and

harmful to Turner's reputation.  The dissemination of this false information was carried

out recklessly and with malice, with knowledge of the resulting injury and damage that

would flow from such reprehensible conduct.

36.     The McDonald's Defendants and the McDonald's Management Team

knew, or should have known through reasonable investigation, that the information

concerning Turner's alleged criminal history was false and harmful to Turner's reputation.

37.     Nevertheless, the McDonald's Defendants and the McDonald's Management Team communicated this false information to third parties causing reputational damage and harming Turner's ability to find subsequent employment.

38.     Furthermore, non-management employees of McDonald's have communicated this false information to third parties causing reputational damage and harming Turner's ability to find subsequent employment as well as his standing in the community.  Such actions are imputed to the McDonald's Defendants by way of the doctrine of respondeat superior.

39.     Turner is entitled to an award for damages, including punitive damages, as a result of the defendants' actions.

## COUNT II—NEGLIGENCE

40.     Paragraphs 1–39 above are re-alleged and incorporated as if fully set forth herein.

41.     By their conduct, the McDonald's Defendants and the McDonald's Management Team failed to act as a reasonably careful person would act under the same or similar circumstances.  Specifically, the negligent actions of these defendants include, but are not limited to, the following:

        (a) Failing to protect private and confidential employee information;

        (b) Failing to investigate the accuracy of Turner's criminal background report;

    (c) Terminating Turner's employment based on an inaccurate criminal background;

    (d) Communicating false and injurious information to third parties without verifying its veracity; and

    (e) Failing to properly hire and train management personnel to act as reasonable and prudent employees with respect to applicant and employee background checks and the dissemination of said information to third parties.

42.    As a proximate result these acts and omissions, Turner suffered damages.

43.    Turner is entitled to an award for damages, including punitive damages, as a result of defendants' actions.

## COUNT III—RACE DISCRIMINATION (TERMINATION)

44.    Paragraphs 1–43 above are re-alleged and incorporated as if fully set forth herein.

45.    The McDonald's Defendants and the McDonald's Management Team terminated the employment of Turner based upon his race—African American—in violation of the Arkansas Civil Rights Act.

46.    As a direct and proximate result of these violations, Turner has lost wages and benefits and suffered emotional distress.

47.    The actions of the McDonald's Defendants and the McDonald's Management Team are egregious and an intentional, willful, knowing, reckless, and malicious violation of the law, meriting an award for punitive damages up to the maximum amount allowed by law.

## COUNT IV—RACE AND GENDER DISCRIMINATION
## (DISPARATE IMPACT)

48.     Paragraphs 1–47 above are re-alleged and incorporated as if fully set forth herein.

49.     As part of the hiring process, the McDonald's Defendants require applicants to submit to criminal background checks.

50.     The McDonald's Defendants then terminate or do not hire individuals with a criminal history.

51.     It common knowledge among employers, such as The McDonald's Defendants, that African-American males are arrested and convicted of crimes at a disproportionate rate when compared to non-minorities and females.

52.     The McDonald's Defendants' hiring policy results in the termination of a disproportionate number of African-American males as compared to non-minorities and females.

53.     Turner was terminated pursuant to this policy; he is entitled to an award for damages, including punitive damages, as a result of the McDonald's Defendants' actions.

### COUNT V—OUTRAGE

54.     Paragraphs 1–53 above are re-alleged and incorporated as if fully set forth herein.

55.     The willful and wanton conduct of the McDonald's Defendants and the McDonald's Management Team is so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized society.

56.    The McDonald's Defendants and the McDonald's Management Team knew and/or should have known that in light of the surrounding circumstances their willful and wanton conduct would naturally and probably result in Turner's emotional distress.

57.    Despite this knowledge, the McDonald's Defendants and the McDonald's Management Team continued with their actions in reckless disregard of the consequences.

58.    This extreme and outrageous conduct proximately caused Turner to suffer emotional distress.

59.    Turner is entitled to an award for damages, including punitive damages, as a result of defendants' actions.

### COUNT VI—VIOLATION OF THE FAIR CREDIT REPORTING ACT

60.    Paragraphs 1–59 above are re-alleged and incorporated as if fully set forth herein.

61.    Turner is a "consumer" as protected and governed by the Fair Credit Reporting Act ("FCRA").

62.    Upon information and belief, the McDonald's Defendants utilized the services of a "consumer reporting agency," as governed by the FCRA, to gather consumer reports, as defined in 15 U.S.C. § 1681(d), that were subsequently relied upon in making employment decisions.

63.     Turner applied for a job with the McDonald's Defendants in or about April 2010.

64.     As part of the application process, Turner may have authorized a criminal background check as a necessary condition of employment.

65.     The McDonald's Defendants subsequently obtained a consumer report regarding Turner's criminal background from a "consumer reporting agency."

66.     The background report, however, referred to the criminal record of "Darrion Lamar Turner" as opposed to "Daron Dewayne Turner."

67.     Despite Turner's undisputed and documented proof of identification, the McDonald's Defendants maintained that Turner and "Darrion Lamar Turner" were one in the same, and acting on this false belief, the McDonald's Management Team suspended Turner from work pending further notice.

68.     Subsequently, Turner was notified by telephone that he was being terminated because of the information contained in a criminal background check that pertained to another individual.

69.     Though Turner presented The McDonald's Team with multiple forms of proof of identification, and told them directly that the background report did not pertain to Turner, the McDonald's Defendants did not take steps to have the report corrected.

70.     Furthermore, before taking the adverse action, the McDonald's Defendants failed to provide Turner a copy of the criminal background report within a sufficient amount of time to allow Turner to discuss the report with the McDonald's Defendants' representatives or otherwise respond to the inaccuracies that the report contained.

71.    Additionally, the McDonald's Defendants did not provide Turner with a summary of his rights under the FCRA.

72.    The McDonald's Defendants' actions demonstrate negligence. Such actions also represent a willful violation of the FCRA by failing to provide a copy of the background check to Turner before taking the adverse action against him, and by failing to provide Turner with a summary description in writing of his rights under the FCRA before taking the adverse action against him.

73.    As a result of the above described violations of the FCRA, Turner seeks statutory damages, actual damages, punitive damages, and attorney's fees as allowed by the FCRA.

74.    Turner is also entitled to equitable relief against the McDonald's Defendants requiring their compliance with the FCRA in all future instances and/or re-employment of Turner, and enjoining its future violations of the FCRA. Turner is entitled to attorney's fees in this regard.

## COUNT VII—IMPUTED LIABILITY

75.    Paragraphs 1–74 above are re-alleged and incorporated as if fully set forth herein.

76.    At all times relevant, the members of the McDonald's Management Team were the agents and/or employees of the McDonald's Defendants.

77.    At all times relevant, the members of the McDonald's Management Team were acting within the course and scope of their agency and/or employment or were acting at the direction of the McDonald's Defendants.

78.     Accordingly, each of the wrongful acts committed by the McDonalds' Management Team is charged to the McDonald's Defendants.

79.     Demands a jury trial.

WHEREFORE, plaintiff, Daron Dewayne Turner, prays for all relief stated herein, including but not limited to, an award of back pay, compensatory damages, punitive damages, reinstatement or front pay, for injunctive relief requiring defendants to cease and desist from violating state and federal law, for injunctive relief requiring the removal of all negative materials from his employment file, and for all other relief to which he is entitled.

Respectfully Submitted,

Paul D. Waddell (87179)
Kevin W. Cole (93200)
M. Scott Jackson (2008195)
BARRETT & DEACON, P.A.
P.O. Box 1700
Jonesboro, AR 72403
(870) 931-1700

By: _Paul Waddell_
       Attorneys for Plaintiff,
       Daron Dewayne Turner

IN THE CIRCUIT COURT OF JACKSON COUNTY, ARKANSAS
CIVIL DIVISION

DARON DEWAYNE TURNER                                      PLAINTIFF

v.                              Case No. 2011-CV-_____

MCDONALDS CORPORATION;
MCDONALDS USA, LLC; NEWPORT
ENTERPRISES, LLC; SHEILA SNOW;
JULIE SUMMERFIELD; SARA MCGEE;
JOHN DOE ENTITIES 1-10; JOHN DOE
INDIVIDUALS 11-20                                        DEFENDANTS

## AFFIDAVIT

STATE OF ARKANSAS
COUNTY OF CRAIGHEAD

    I, Paul D. Waddell, do state on my oath as follows:

    1.    I am an attorney with Barrett & Deacon, P.A. located at 300 South Church

Street, Jonesboro, Arkansas 72401.  Barrett & Deacon, P.A. has been employed by Daron

Dewayne Turner to bring a cause of action against McDonalds Corporation; McDonalds

USA, LLC; Newport Enterprises, LLC; Sheila Snow; Julie Summerfield; Sara McGee;

John Doe Entities 1-10; and John Doe Individuals 11-20.

    2.    Plaintiff is currently unable to identify John Doe Entities 1-10 and John

Doe Individuals 11-20, all of whom are potentially liable for plaintiff's claims.

    3.    This affidavit is made pursuant to Ark. Code Ann. § 16-56-125, and is

intended to conform thereto.



FURTHER AFFIANT SAYETH NOT.

*Paul Waddell*
Paul D. Waddell

Date *04/05/11*

## ACKNOWLEDGMENT

State of Arkansas
County of Craighead

On this _5th_ day of April, 2011, before the undersigned officer, personally

appeared Paul D. Waddell, known to be the person whose name is subscribed to in the

above and foregoing Affidavit, and acknowledged that he executed the same for purposes

therein contained.

*Gale Peebles*
Notary Public

My commission expires:

_12-21-2015_

GALE PEEBLES
NOTARY PUBLIC-STATE OF ARKANSAS
COUNTY OF CRAIGHEAD
COMMISSION #12346123
EXPIRATION: DECEMBER 21, 2015